UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

BRYAN SEXTON,    :   12 CIV 08984 (PAC)

           Plaintiff,    :   **AFFIDAVIT OF**
               :   **DAVID DELLACATO**
   - against -    :

DAVID DELLACATO,    :

           Defendant.    :

----------------------------------------------------------------- X

STATE OF NEW YORK    )
                         )ss:
COUNTY OF NEW YORK  )

        DAVID DELLACTO, being first duly sworn, deposes and says as follows:

        1.    I am the Defendant in the above-captioned matter. I submit this Affidavit in opposition to Plaintiff's "Motion to Compel Production and Contempt."

        2.    I live in the State of Connecticut and reside at 3 Evergreen Lane, Monroe, Connecticut 06468.

        3.    I own less than a one-percent interest in CC Capital Inc. In November 2005, I invested $50,000 in CC Capital Inc. in exchange for 6,579 common shares of CC Capital Inc., which represented approximately two-thirds of a percent of the ownership interest in the company. I never made any additional investments and my ownership interest in CC Capital Inc. has never exceeded two-thirds of a percent.

        4.    In April 2011, I was contacted by Bryan Sexton, the Plaintiff in the above-captioned matter. Mr. Sexton advised me that he filed an arbitration proceeding against CC Capital Inc. and certain officers of the company. He asked me to send him certain documents

7132635.4

pertaining to CC Capital Inc. During the course of the ensuing months, Mr. Sexton called me persistently, suggesting I join in his legal proceedings against CC Capital Inc. I informed Mr. Sexton that I did not want to get involved in the matter.

5. In November 2012, I was contacted by Jake Karam, who informed me that I would likely receive a subpoena in an arbitration proceeding filed by Mr. Sexton.

6. On or around November 12, 2012, I participated in a conference call with Mr. Karam and the attorney representing CC Capital Inc., A. Irvin Schein. During that conference call, I advised Mr. Schein that I had some documents and emails pertaining to CC Capital Inc. Mr. Schein asked me to send him a copy of those documents and emails, and I agreed.

7. I kept a folder in my home in which I placed the documents I received pertaining to CC Capital Inc. and Red Star Poker. In that folder, I also stored printout copies of emails I exchanged with Mr. Karam around the time of my investment in CC Capital Inc. in 2005. I also searched my home computer and personal email account, shooterdell@aol.com, for emails pertaining to CC Capital Inc. and Red Star Poker. I used the search terms "Sexton," "Red Star Poker" and "Jake." I printed all of the emails that surfaced as a result of my searches. I sent copies of the emails that I found on my computer and a copy of the contents of the folder to Mr. Schein.

8. On or around November 15, 2012, I received a subpoena from the International Centre for Dispute Resolution ("ICDR"), requesting several documents pertaining to CC Capital Inc. and Red Star Poker.

9. All of the email communications I have pertaining to CC Capital Inc. and Red Star Poker would either be in the folder I kept in my home or stored on my shooterdell@aol.com

personal email account. At the time of my initial investment in CC Capital Inc., I was employed by Kellogg Partners. I subsequently changed employment in 2007 and began working for the securities firm, BTIG. I was laid off by BTIG in July 2011. At that time, I created a new personal email account, david.dellacato@aol.com, as I began to apply for new positions and wanted to have a personal email account that was more professional. My usual practice was to either print or send emails pertaining to CC Capital Inc. that I received on any of my work email accounts or on the david.dellacato@aol.com email account to my shooterdell@aol.com account.

10. I had minimal contact with Mr. Karam after I made my initial investment in CC Capital Inc. in November 2005. In fact, aside from one email exchange in August 2006, a copy of which I produced in the arbitration, I do not recall any telephone conversations or email correspondence with Mr. Karam from 2006 until 2011, when Mr. Sexton began contacting me about his arbitration action against CC Capital Inc.

11. On November 16, 2012, I received an email from Mr. Schein informing me that he received the documents I sent him. Mr. Schein did not raise any questions about the documents and had no objections to me producing them in the arbitration proceedings. I replied via email later that day and informed Mr. Schein that I was experiencing ongoing computer problems as a result of Hurricane Sandy. Therefore, I asked Mr. Schein to return the documents to me or send me a copy of them so that I could produce them in the arbitration proceedings.

12. I subsequently received a package from Mr. Schein's law office containing copies of the documents that I originally sent to Mr. Schein. The copies were inside an envelope. I opened the envelope and sifted through the documents inside the envelope in order to determine if all of the documents were inside. After determining that all of the documents appeared to be accounted for, I immediately placed the entire envelope, with the documents inside, into another

package. I then sent that package to Leslie Trager in accordance with the subpoena I received from the ICDR. A copy of the documents that I submitted in the arbitration is attached hereto as **Exhibit A**.

13. The third-party subpoena requested "[a]ll documents relating to any receipt of funds or any other thing of value" that I received from any entity affiliated with Red Star Poker. I received some dividend payments from CC Capital Inc. from 2008 to 2010. I prepared a list of all the dividend payments that I received from CC Capital Inc., including the dates and amounts of deposits, and included the list in the set of documents that I sent to Mr. Trager. I did not have copies of any records of the deposits, because the electronic records are not available online through my bank's website. The bank informed me that it would take six-to-eight weeks to receive paper copies, which was longer than the period of time I had to respond to the third-party subpoena. I advised Mr. Trager of this and told him that I could request paper records from the bank if he wanted them.

14. At some point after I sent the documents, I received a phone call from Mr. Trager, who advised me that he was an attorney representing Mr. Sexton in the arbitration. Mr. Trager wanted to search my home and business computer and personal email accounts.

15. On December 14, 2012, I received a summons, complaint and order to show cause in the above-captioned matter.

16. I have again reviewed my files and computer, and the only other document I have found that is responsive to the third-party subpoena is another copy of a Stockholders Agreement that I executed in November 2005. A copy of the Stockholders Agreement is attached hereto as **Exhibit B**.

4

17. The copies of the emails that I produced in the arbitration proceeding were not intentionally redacted to conceal certain information, as Mr. Trager alleges in his declaration. In reviewing the emails that were attached as Exhibit D to Mr. Trager's declaration, it appears as though the headers on some of the emails were cut off by the copier. I have attached hereto as **Exhibit C** a complete copy of the emails that Mr. Trager attached as Exhibit D to his declaration.

18. I do not have any other additional documents or emails pertaining to CC Capital Inc. or Red Star Poker that I have not already produced in the arbitration proceeding involving the company and Mr. Sexton.

Dated: January 2, 2013

_____
David Dellacato

Sworn to before me this
2nd day of January, 2013

_____
Notary Public

**MISTIE R. CERTAIN**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JAN. 31, 2014