Judith A. Lockhart
Andriy R. Pazuniak
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
(212) 732-3200
*Attorneys for Defendant David Dellacato*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BRYAN SEXTON,

               Plaintiff,               Index No. 12 Civ. 08984 (PAC)

      - against -

DAVID DELLACATO,

               Defendant.
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION AND CONTEMPT

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005
———
(212) 732-3200

7132749.3

## INTRODUCTION

Defendant David Dellacato ("Dellacato") submits this memorandum and the accompanying affidavits of David Dellacato, sworn to January 2, 2013 ("Dellacato Aff.") and A. Irvin Schein, sworn to January 2, 2013 ("Schein Aff."), in opposition to the "Motion to Compel Production and Contempt" filed by Plaintiff Bryan Sexton ("Sexton").

In response to a third-party subpoena for testimony and documents issued by the International Centre for Dispute Resolution ("ICDR") in connection with an arbitration proceeding to which he is not a party, Dellacato produced to both parties the documents in his possession that pertained to the items listed in the subpoena. Despite Dellacato's voluntary cooperation and compliance with the third-party subpoena, Sexton filed the present action by order to show cause and by summons and complaint against Dellacato, falsely accusing Dellacato of conspiring with CC Capital Inc. and an officer of the company to submit falsified documents, requesting that the Court compel the production of documents he does not have in his possession and grant Sexton access to Dellacato's personal computer and the computer of his employer (over which Dellacato has no control).

Sexton's allegations are entirely unfounded. The relief Sexton seeks is unnecessary, burdensome and harassing and would constitute a severe and pointless invasion of Dellacato's privacy. The requested relief is even more troubling given that Dellacato is not a party to the arbitration. He undeniably responded to the third-party subpoena. This Court should not allow Sexton to proceed with this baseless and abusive fishing expedition against a non-party. Accordingly, Dellacato seeks a denial of Sexton's "Motion to Compel Production and Contempt," a dismissal of the complaint Sexton filed against Dellacato, and such further relief as

7132749.3

this Court deems appropriate, including Dellacato's costs and attorney's fees in connection with this proceeding.

## STATEMENT OF FACTS

As set forth more fully in the accompanying affidavits of Dellacato and Schein, this case involves a third-party subpoena that was issued by the International Center for Dispute Resolution in an arbitration proceeding filed by Sexton against Jake Karam, Kent Hughes, Vladimir Shushkovsky, Ian Winter, CC Capital, Inc. and Red Star Poker (the "Arbitration"). Dellacato, a Connecticut resident, is not a party to the Arbitration.[1] Dellacato is simply one of many shareholders of CC Capital, Inc. In fact, he is the smallest shareholder, with an interest in the company of only 0.66 percent. Dellacato Aff. ¶ 3. Dellacato became a shareholder in 2005 and received dividends sporadically until 2010. Dellacato Aff. ¶¶ 3, 13. Beginning in 2011, Sexton began contacting Dellacato about the Arbitration. Dellacato informed Sexton he was not interested in the Arbitration and did not want to get involved. Dellacato Aff. ¶ 4.

On November 15, 2012, Dellacato was served with a third-party subpoena to produce at an arbitration hearing certain documents pertaining to Red Star Poker and CC Capital Inc. Dellacato had been alerted to the fact that the subpoena was coming a few days earlier by Karam and his attorney, A. Irvin Schein of Minden Gross LLP, and Schein requested that Dellacato provide the respondents with a set of the documents Dellacato intended to produce to Sexton, which he did. Dellacato Aff. ¶¶ 5–6. Dellacato then requested that Schein return a copy of the documents for Dellacato to send to Sexton because he was having problems with his computer and copying as a result of Hurricane Sandy. Dellacato Aff. ¶ 11. Dellacato received the

---

[1] Dellacato consents to jurisdiction for purposes of the present Order to Show Cause. However, should this action continue, Dellacato reserves the right to challenge this Court's personal jurisdiction over him in the subsequent action.

documents back from Schein and subsequently forwarded them to Sexton's attorney, still in the envelope from Schein's law firm. Dellacato Aff. ¶ 12.

In order to avoid requiring Dellacato to travel to New York City and appear at a hearing with an arbitrator and the parties, the parties to the Arbitration and the Arbitration panel agreed that Dellacato could waive his appearance and simply deliver the documents to Sexton's attorney. Dellacato voluntarily complied with the third-party subpoena and produced responsive documents.

Shortly after receiving Dellacato's production, Sexton filed the present motion seeking to compel Dellacato to produce documents which Dellacato does not possess, and to hold Dellacato in contempt for failing to do so and for the alleged and wholly unsupported allegations that he falsified documents.

## ARGUMENT

In the present action, Sexton readily admits that Dellacato delivered to Sexton's attorney a plethora of documents in response to the third-party subpoena. Accordingly, Sexton's primary contention is not that Dellacato failed to respond to the subpoena, but rather that the documents Dellacato produced in response to the subpoena were allegedly compiled by another party and allegedly falsified. That is simply not the case.

First, it is clear from the affidavits of Dellacato and Schein that the documents produced by Dellacato were in fact the documents Dellacato had in his possession relating to Red Star Poker and CC Capital, Inc. Dellacato Aff. ¶ 7. Sexton points to the Minden Gross envelope as evidence that the documents did not come from Dellacato. As Dellacato stated in his affidavit, a set of the documents sent to Schein was returned to Dellacato for production to Sexton because he was having computer problems as a result of Hurricane Sandy. That is the only reason the

3

documents were in an envelope from Minden Gross LLP. Dellacato Aff. ¶¶ 11–12. It is also clear from these affidavits that no changes were made to the set of documents returned to Dellacato and subsequently sent to Sexton—no documents were added, subtracted or altered in any way. Schein Aff. ¶¶ 9–13. There is no evidence to support Sexton's wild allegations that the production was falsified.

Next, Sexton claims that certain actions were taken by Dellacato before the subpoena was served somehow evidence collusion between Dellacato and Karam. As explained by Dellacato, he had been given a heads up that he would be receiving a subpoena from Sexton by Karam and Schein prior to its service. Because the subpoena did not call for the production of documents to respondents as well, they called to advise that they would like a copy of Dellacato's production. Schein Aff. ¶ 5.

Sexton claims that certain information was deleted or appeared to be whited-out on the emails he received in an effort to hide the fact that the emails were printed by Karam and not Dellacato. It is clear from a review of the documents that when the documents were copied by Dellacato the tops of several pages were cut off. A review of the documents sent to Schein confirm that was the case. See Dellacato Aff. ¶ 17, Ex. C. These emails were in fact printed by Dellacato in 2005 and have been reproduced without the top cut off as Exhibit C to the Dellacato Affidavit.

Sexton also complains about missing documents, including a stockholder agreement referenced as an attachment in a 2005 email. Dellacato has done another review of his documents and found another hard copy of the stockholder agreement, which is attached to his affidavit as Exhibit B. It is unclear whether or not this is the stockholder agreement that was attached to the email. Additionally, although Sexton complains that Dellacato did not produce

4

copies of the dividend checks, Dellacato advised Sexton's attorney that it would take 6 to 8 weeks to get them from the bank and so in the alternative Dellacato went through his check register and listed the dates and amounts for each dividend payment. Dellacato Aff. ¶ 13.

Finally, Sexton complains that Dellacato had multiple email accounts and therefore he must have had multiple computers. As a preliminary matter, one does not follow from the other. In any event, Dellacato does not have multiple computers. As explained by Dellacato, he was laid off from his job in July 2011. At that time, he created a new personal email account, david.dellacato@aol.com, because he wanted a more professional email address for his job search. Dellacato Aff. ¶ 9. There is no other computer.

Thus, Sexton's allegations of impropriety and falsified documents are completely unfounded. As such Sexton's request to seize and search Dellacato's personal computer is inappropriate and unnecessary. It is also harassing and burdensome. Dellacato has confidential and personal information on his computer and uses it daily. Sexton's request to search Dellacato's work computer should also be denied. First, Dellacato has no ability to permit the search of his employer's computer and clearly the subpoena to Dellacato does not extend to his employer. Moreover, even if it could, Dellacato has not received or sent emails relating to this dispute from his current work computer. Any emails that may have been sent to his office in 2005 and 2006 while he was employed by another company would have been forwarded to his personal email account. Dellacato Aff. ¶ 9.

As a very minor shareholder and a non-party to this arbitration, Dellacato has already satisfied his obligations pursuant to the subpoena and should not be asked to do anything more. The Second Circuit Court of Appeals has recognized that "[a]rbitrators issuing subpoenas and

district courts asked to enforce them can, and should, take steps to minimize the burden on non-party witnesses." *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 580 (2d Cir. 2005).

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's "Motion to Compel Production and Contempt," dismiss the complaint Sexton filed against Dellacato, and award Dellacato the costs and attorney's fees that he incurred in connection with this action.

Dated: New York, New York
       January 2, 2012

CARTER LEDYARD & MILBURN LLP

By: _____
Judith A. Lockhart
Andriy R. Pazuniak

Attorneys for Defendant David Dellacato
2 Wall Street
New York, NY 10005
(212) 732-3200